Russell *v.* Bank.

RUSSELL  *v.*  BANK.

(*Jackson.*  May  28,  1900.)

1. DEMURRER.  *To whole bill bad, when.*

A demurrer to the whole bill, which offers a defense to only a part of it, is bad.  (*Post, pp. 615-618.*)

2. SAME.  *Paper not part of bill.*

A will whose construction is sought, though filed and copied into the transcript, cannot be looked to on demurrer, where it is not exhibited with nor made part of the bill.  (*Post, p. 618.*)

3. REMAINDERMAN.  *Rights of.*

A remainderman can maintain bill to enjoin the administratrix, who is likewise widow and sole distributee of the life-tenant, from receiving a fund left by the intestate on deposit in bank, in his own name, upon averment that the life-tenant had sold and conveyed the entire estate in property, consisting of realty, and had set apart and deposited said fund as the portion of the proceeds due the remainderman for his interest; that complainant ratified and accepted such fund in lieu of his interest in the land, and that defendant was insolvent and the liability of the sureties on her bond for such fund questionable, if she was allowed to receive it.  (*Post, pp. 615-622.*)

FROM  SHELBY.

Appeal  from  Chancery  Court  of  Shelby  County. F.  H.  HEISKELL,  Ch.

CARROLL,  McKELLAR  &  DULLINGTON  for  Russell.

MALONE  &  MALONE  for  Bank.

WILKES, J. This is a contest over a fund of $8,500, on deposit in the defendant bank to the credit of J. H. P. Westbrook at the time of his death.

Complainants claim that this sum is a trust fund and belongs to them, while the defendant, Mary P. Westbrook, claims that it is assets of the estate of her deceased husband, J. H. P. Westbrook, and that, in any event, she is entitled to receive the fund from the bank, as his administratrix. The cause was heard upon demurrer before a special Chancellor, and he sustained the demurrer, and complainants appealed and assigned errors.

The allegations in the bill are that, in 1887, E. E. Westbrook died, after making and publishing his last will and testament; that upon a proper construction of his will an estate for life was vested in his widow, Jennie R., and an additional estate for life in Dr. J. H. P. Westbrook, with remainder in fee to complainants, Pauline S. Russell and Anna J. Steinreid. John J. Ross, who is mentioned in the will, died intestate and unmarried prior to the death of the life tenants.

It is further alleged that soon after the death of the widow, Jennie R., Dr. J. H. P. Westbrook sold a valuable parcel of land for $15,000, and deposited the proceeds in the defendant bank, which now has $8,500 of the same on deposit,

or a part of it loaned out. It is alleged that complainants are entitled to take this fund, in view of the fact that Dr. Westbrook sold the entire fee in the land, whereas he had only a life estate, with remainder in them, and the contention is that they would be entitled to reclaim the land or take these proceeds and confirm the sale.

The bill charges, further, that Dr. Westbrook, in his lifetime, recognized this fund as belonging to complainants, and repeatedly declared that such was the fact, and that he refused to dispose of the same during his life or by will before his death. Hence that they are entitled to recover the same from the bank direct, and that it does not go to the administratrix of Dr. Westbrook, the defendant, Mary, who is also his widow and sole distributee.

It is further alleged that the widow is insolvent, and the fund should not be paid to her, but direct to them, and as their property. The prayer is that the fund be enjoined in the hands of the bank and the parties to whom loaned, until further orders of the Court, and that, on final hearing, it be declared a trust fund and the property of complainants, and that it be settled upon them to their sole and separate use, and for all further and general relief proper.

Russell *v.* Bank.

Mrs. Westbrook appeared and demurred to the bill, the grounds of her demurrer being thus briefly summarized:

1. That as the deposit stood in the name of John H. P. Westbrook, without any earmark, she was entitled, as administratrix, to collect the same, she and her bondsmen being accountable for a proper disposition of the same, especially as it does not appear the same was not needed to pay debts.

2. That conceding that Dr. John H. P. Westbrook had only a life estate and complainants owned the fee in the plantation, this fact did not give them an election to renounce their claim to the land and take the balance of the proceeds of the purchase money on deposit.

3. That the declarations made by Dr. J. H. P. Westbrook were not creative of a trust, but were merely erroneous expressions of opinion by him as to the legal rights of the parties, and gave no cause of action to the complainants.

Pretermitting for the present the question raised under the first ground of demurrer, we proceed to examine the second, inasmuch as we are of opinion that the prayer of the bill is broad enough to test the question as to the final disposition of the fund, and the bill can therefore be sustained for that purpose, even though the fund should be paid over for the time being to the administratrix.

The first ground of demurrer does not there-
fore go to the whole of the bill or relief prayed,
and does not dispose of the entire case, and is,
for this reason, bad. We proceed therefore, under
the second ground of demurrer, to consider the
question of the ownership of the fund, so far
as it is raised by that ground of demurrer and
the allegations of the bill. The will is not made
a part of the bill, nor an exhibit to it, but
the bill states simply that a certified copy of
the will will be filed ᐟ on or before the hearing.
While, therefore, the will is copied into the tran-
script, we cannot look to it, in the present
status of the case, to determine what the rights
of the parties might be, under its proper con-
struction, in the land out of which the fund
arose. Taking the allegation of the bill as correct
that Dr. Westbrook had only a life estate in the
land sold, and that complainants are entitled to
the remainder, the next question presented by the
demurrer is whether complainants, as remainder-
men, have the election to forego their claim to
the land and to take this balance of proceeds of
its sale as their share and interest in the same,
or in other words, to ratify the sale and take
a part of its proceeds in full of all their in-
terest in the same. Upon this feature of the
case, the insistence of complainants' counsel is
that if a tenant for life sell the entire estate,

when by law he was only authorized to sell the life interest, the remainderman may ratify the sale and agree with the tenant for life upon an apportionment of the proceeds, and if they cannot agree, equity may make the division, and that in this case, what was done amounted to a division of the proceeds by the life tenant and a subsequent ratification of such division by the remainderman.

We think, upon the hypothetical case put, if the contract or agreement can be considered as one executed by both parties, and finally completed and binding upon both, the result would follow as contended, for undoubtedly all the parties in interest may agree to the disposition of property belonging to them, jointly or in common, and a division among themselves, and if it is executed, they will all be estopped to repudiate and disturb it. The case of *Vaden* v. *Vaden,* 1 Head, 444, 450, is cited and relied on. In that case it appeared that a life tenant, having in her hands a sum of money, invested the same in the purchase of a female slave, who afterwards gave birth to eleven children, and the same were far more valuable than the amount of the original sum invested in the negro woman, and the tenant for life having died, the remaindermen claimed that they had an election to take the slaves, as the trust fund was invested

in them, but the Court refused their application, holding they had no right to the slaves. The Court said:

"We are not aware that the precise question has ever been adjudicated in this State, but the principle stated in *Bonner* v. *Bonner,* 7 Hum., 436, would seem very nearly to meet the case. There the remaindermen filed a bill asking security for the safety and forthcoming of slaves obtained in exchange for the one in which they were interested, at the end of the life estate. This was refused as to the slaves received by the tenant for life, in exchange, the Court saying: 'We are aware of no principle or precedent which would sanction or authorize it.' It was argued by counsel in that case, as it is here, upon the authority of *King* v. *Sharp,* 6 Hum., 56, and other authorities, that the tenant for life was trustee for the remainderman, and, consequently, that the latter was entitled to have the original fund or property, or that in which it might be invested, or for which it was exchanged, at his election, upon the general principle on that subject applicable to trustees and beneficiaries. But this argument was considered unsound by the Court. In the case of *King* v. *Sharp,* 6 Hum., 56, the tenant for life was held to be a quasi trustee, and, further, that 'he may dispose of the property at pleasure, so

that he does not thereby injure the inheritance in remainder.' He may not remove it out of the State, so as to endanger the safety of the property, or destroy it. He may use it and make all the profit on it he can, with due regard to its safety and protection. To that extent he may be called trustee, but he is not so in the sense of a pure trust, as a personal representative, guardian, etc." *Vaden* v. *Vaden,* 1 Head, 444-50.

We are of opinion this case is not in point. In the first place, it involves the income or increase of personal property, and not the corpus of real estate. If the question had been whether the remaindermen could claim the original slave or the proceeds of her sale, the cases would have been more nearly analogous. But the case of *Vaden* v. *Vaden* proceeds upon the idea that the life tenant may make the property productive and reap the benefit of the income or increase, and so he may make real estate productive and reap the benefit of the rents and profits, but the case does not involve the rights of the parties owning either the life estate or remainder to the specific property, real or personal.

Now, if Dr. Westbrook had only a life estate, but assumed to sell, and did sell, the fee, and if he set aside so much of the proceeds as he believed properly belonged to the remaindermen

for their benefit, and they afterwards acquiesced in the sale and elected to take that portion of the proceeds set apart for them, it is difficult to see why this may not be done. This is, of course, assuming that Dr. Westbrook had a life estate and the complainants a remainder in the land, which we must do under the allegations of the bill, the will not being before us. What may be the result of a proper construction of the will we cannot now tell.

We are of opinion, therefore, that the decree of the Court below must be reversed upon the second ground of demurrer; and inasmuch as the fund may possibly be decreed to complainants, and, if paid over to the executrix, may not be covered by the terms of her bond so as to make her sureties liable therefor, this Court will continue the injunction in force, and the fund will remain in bank until its ownership is determined, or until further orders of the Court.

The question raised by the third ground of demurrer is a difficult one, on which there is a division of authority, and we do not feel called upon at this time to determine it.

The decree of the Court below will be reversed and cause remanded for answer and such further proceedings as may be necessary, and the appellee will pay costs of appeal.